Lebanon Lodge, Fraternal Order of Police, No. 42 *v.* City of Lebanon, et al.

Argued December 6, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS.

*R. Hart Beaver*, with him *Beaver & Wolf,* for appellants.

*George E. Christianson,* with him *Lewis, Brubaker, Whitman & Christianson,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 28, 1972:

The Court of Common Pleas of Lebanon County directed the City of Lebanon to appoint an arbitration panel representative for the purpose of settling contract disputes between the Fraternal Order of Police (F.O.P.) and the City. The F.O.P. had originally proceeded in mandamus under the Act of June 24, 1968, P. L. , No. 111, §§1-4, 43 P.S. §§217.1-217.4 in which it sought to compel the City to appoint an arbitrator pursuant to the provisions of the Act. The legislation gives to policemen and firemen employed by a political subdivision of the Commonwealth the right to bargain collectively. Section 4 of the Act, 43 P.S. §217.4, provides that in the case of an impasse, either party to the dispute may request the appointment of a board of arbitration.

This dispute arose in August and September of 1968 when in response to a request by the F.O.P., agents of the City of Lebanon met with the representative of the police to discuss terms of a new contract. Negotiations were conducted and tentative agreements were reached subject to approval by the police members and the City Council. The proposals were approved by the members of the F.O.P. including, among other things, an eight-year contractual term. A copy of the minutes of the F.O.P. meeting at which the proposals were approved was delivered to the Mayor of Lebanon.

At that time the Mayor reiterated the specific proposals and told the F.O.P. representative that the entire agreement would be formally prepared in greater detail and refined in a draft. Subsequently, without formally accepting the agreement as approved by the F.O.P. membership, Council enacted an ordinance providing appropriations for the police for the following year, 1969, which differed from the proposals approved by the F.O.P. membership and which did not include sev-

eral agreed terms, for example, insurance coverage and pension benefits.

In April of 1971 the F.O.P. notified the City of its desire to enter into contract negotiations. The City maintained that there was in existence a valid binding contract (by virtue of the 1968 ordinance) which had several years to run. It refused to negotiate or to appoint an arbitrator.

Summary judgment in Mandamus was ordered for the plaintiffs and the City was directed to appoint an arbitrator.

Although we are of the opinion that the lower court correctly found that the fault for the dispute lodged in the City, we hold that the order directing the City to appoint an arbitrator should be modified. We direct the City to negotiate with the F.O.P.

The City contends that it had fulfilled its obligation to bargain collectively when it negotiated with F.O.P.'s representative in 1968. The agreement reached at that time, which purported to run for a term of eight years, is still in effect, according to appellant, thus relieving the City of any responsibility to negotiate in 1971. The statutory language and the dialogue of both the F.O.P. and the City leads us to the contrary conclusion.

Section 4 of the Act, 43 P.S. §217.4 provides: "(a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employees are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration. For purposes of this section, an impasse or stalemate shall be deemed

to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated." Section 2 of the Act, 43 P.S. §217.2 also provides that it shall be the duty of public employers and policemen and firemen employes to enter into settlement by way of "written agreements." To us it is apparent that written agreements must be consummated to terminate labor disputes.

Although negotiations were conducted in 1968, it cannot be said that these negotiations bore the fruit of their labors without written agreements as mandated by the Act or that in any fashion can they be considered binding at this time. There was no formal acceptance of the F.O.P. approved proposals in 1968. In fact, the Mayor noted that these proposals and agreements would be delineated more specifically in a "smooth draft" which never came off the board. The City cannot seriously contend that the ordinance was a final written agreement. That ordinance differed materially from the F.O.P. approved provisions for maximum increments to base salary and completely omitted such vital terms as medical and life insurance coverage, vacation terms, and clothing allowances. Since the ordinance as enacted was not a written manifestation of any agreement between the City and the F.O.P., it follows and we so find that the eight-year term of the initial agreement does not bind the F.O.P.

That the F.O.P. did not, at that time, object to this ordinance and seek the appointment of a Board of Arbitration is of no significance in the dispute presently before us. The F.O.P. is not here urging the enforcement of the terms of any discussions made in 1968. It is attempting to enjoy the statutory provisions and negotiate anew with the City. Indeed if the F.O.P. had at

that time objected to the City's failure to formalize in writing the agreed terms, a proceeding before the Pennsylvania Labor Relations Board may have been proper. But this is not the factual position herein presented.

We conclude that negotiation rather than arbitration is the proper direction of pursuit by the parties because the statute provides for arbitration only when an *impasse* in the collective bargaining process is reached or if the appropriate lawmaking body fails to approve the agreement. Here the collective bargaining process died a-borning. Collective bargaining proceedings never did get under way although the F.O.P. initiated a movement in that direction in April, 1971. We hold that the bargaining process must be exhausted before arbitration can be directed.[1]

### ORDER

AND Now, this 28th day of March, 1972, the Order of the Court of Common Pleas of Lebanon County directing the City of Lebanon to appoint a person to a Board of Arbitration, is hereby vacated; the City of Lebanon is hereby ORDERED to enter into contract negotiations with the Fraternal Order of Police consistent with this opinion.

------

[1] We recognize the case of *Tate v. Philadelphia Transportation Co.*, 410 Pa. 490, 190 A. 2d 316 (1963), which held, *inter alia*, that the Court could not directly or indirectly make collective bargaining compulsory. However, the then Chief Justice BELL in that case emphasized that such a holding was appropriate because of the absence of legislation authorizing collective bargaining or arbitration in these instances. We believe that the legislation in the instant case, enacted in 1968, provides the necessary authorization to direct collective bargaining and arbitration. The effect of that legislation was to exclude the case before us from the ambit of cases covered by the *Tate* rule. Furthermore, public policy demands that the collective bargaining process and arbitration be utilized to the fullest where the dispute or difference involves policemen or firemen, occupations that are so overwhelmingly fraught with the public interest.