**North Huntingdon Township Police Department and Relief Association v. North Huntingdon Township**

*Thomas P. Cole, II* and *Alex E. Echard,* for petitioner-defendant.
*Joseph F. Cassarino,* for plaintiff-respondent.

ACKERMAN, *J.,* December 9, 1981—At no. 9142 of 1981, plaintiff, North Huntingdon Police Department and Relief Association (hereinafter "police") filed a complaint in mandamus against North Huntingdon Township and its various agents, hereinafter "township" asking the court to compel the township to comply with the binding arbitration provisions of the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1 et seq. Subsequently at no. 9186 of 1981 the township filed a petition for a temporary restraining order, application for stay and petition for declaratory judgment asking for various relief that would prevent the labor dispute between the police and the township from proceeding to binding arbitration. The police have filed a motion to strike the township's petition.

The pleadings indicate that the current employment relationship between the police and the township is governed by an interest arbitration award issued on January 3, 1979, and enforceable through December 31, 1981. In excess of 11 months prior to

the expiration date of the current contract and by letter dated January 15, 1981, the township was advised by the attorney for the police that he was the police representative for the upcoming contract negotiations and by that letter, requested that negotiations toward a new contract begin. The pleadings next reflect that on May 11, 1981, the police representative once again contacted the township expressing concern that a date to commence negotiations had not been set and designated May 22, 1981, as the deadline for setting a firm date to begin the negotiation process. Between the end of May and July 22, 1981, several collective bargaining sessions ensued between the township and the police. On July 22, 1981, a tentative agreement was reached upon all outstanding issues except the pension plan. That tentative agreement was not ratified by the police and by letter dated September 3, 1981, the police through their representative requested that the matter be submitted to binding arbitration pursuant to the provisions of Act 111, supra. Some three weeks later, several rank and file police members (the number of them does not appear in the pleadings) advised the township that they did not consider themselves represented by the police representative and that all agreements entered into by him were in their opinion null and void. All of these facts are alleged in the township's petition and being uncontradicted are accepted as true.

Act 111 provides generally for collective bargaining between firemen, policemen and their public employers; and, in the event of a bargaining impasse, for compulsory and binding arbitration with no right to strike. The issue at hand is whether or not we can ascertain from the pleadings if a bargaining impasse has come about calling for com-

pulsory arbitration. Section 4 of the act provides as follows at 43 P.S. §217.4:

"(a)  If in any case of a dispute between a public employer and its policemen or firemen employees the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employees are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.

For the purpose of this section, an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated."

The dispute centers around the 30-day provision in the legislation quoted above. The police contend that collective bargaining proceedings were initiated prior to July 22, 1981, and that, therefore, their September 3 request was after a 30-day impasse entitling them to proceed to arbitration. The township, on the other hand, contends that before the matter can be arbitrated there must be a 30-day impasse after "good faith" bargaining on the side seeking arbitration. The township in its petition avers that the police have acted in bad faith and, therefore, are not entitled to arbitration at this time. Section 4 of Act 111 dealing with arbitration procedures and quoted above makes no reference to "good faith" bargaining as a condition precedent to the running of the 30-day period, however, the township argues that such "good faith" bargaining

is required by implication. The township calls attention to the case of Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board, 470 Pa. 550, 369 A. 2d 259 (1977) which was a dispute arising out of a representational disagreement, i.e., which of two unions was to be the designated bargaining agent wherein the Pennsylvania Supreme Court found that Act 111 was deficient in not detailing the procedures for the determination of collective bargaining representatives. In light of this deficiency the Supreme Court held, citing the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1932 (Supp. 1976-77), that Act 111 was in pari materia with the Pennsylvania Labor Relations Act, 43 P.S. § 211.1 et seq., and that they were to be "construed together, if possible, as one statute." The court concluded that the failure to do so would bring about a result which was "absurd, impossible of execution or unreasonable." Id. 470 Pa. 556. The absurd result which the Supreme Court was trying to avoid was the court of common pleas conducting and supervising secret representational elections.

The Supreme Court further acknowledged the unique nature of the arbitration provisions of Act 111:

"We recognize, of course, that employees covered by Act No. 111 are not in any respect covered by the PERA (Act 195) and that Act No. 111 provides its own unique and specific procedure, namely, binding arbitration, as the final resort in the event of a bargaining impasse: 43 P.S. § § 217.3-217.8 (Supp. 1976-1977). These provisions of Act No. 111 enacted later than the PLRA are, of course, controlling where the situation warrants. See § 3 of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1936." Id. at 470 Pa. 558.

In short in the Philadelphia Fire Officers Association case there was an obvious gap found in part of Act 111 which had to be filled by reference to the other statutes in order to avoid an absurd result. We do not perceive such a gap, however, in Section 4 of the act dealing with arbitration. The township is critical of Act 111 and suggests that it is too superficial in its treatment of the subject; perhaps, but legislation need not be a masterpiece to command compliance. To the extent that the legislation is too simplistic this is a matter to be dealt with in the legislative chambers and not in the courts.

In its brief and throughout its argument the township has contended that Act 111 creates simply a presumption of an impasse in bargaining after the passage of 30 days. The act provides: "For purposes of this section, an impasse or stalemate shall be *deemed* to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within 30 days after collective bargaining proceedings have been initiated." (Emphasis supplied) 43 P.S. §217(4)(a). Note that the act does not say that an impasse will be "presumed" but rather the legislature has used the word "deemed." The common meaning of the word "deem" is: "To judge; to determine or conclude upon consideration; to form a judgment," Ballentine's Law Dictionary, 3d Ed. 1969, p. 319. In referring to the definition of the word we are directed to the case of Dameron v. Broadhead, 345 U.S. 322,(1952), which states: " . . . we reject the argument that the word 'deemed' as used implies a rebuttable presumption. . . ."

Simply put, the language of Section 4 of Act 111 indicates that an impasse or stalemate will be judged or determined to have occurred after the

passage of 30 days from the initiation of the collective bargaining proceedings. We have been shown nothing that indicates that a straightforward application of the language as written would violate or affect the clear purpose of the legislation.

The Commonwealth Court has considered a factual situation which we regard as being directly on point with the present case and which finds the township's position to be without merit in Borough of New Cumberland v. Police Employees of the Borough of New Cumberland, 51 Pa. Commonwealth Ct. 435, 439, 414 A. 2d 761, 763 (1980):

"Based on its allegations that Police had engaged in bad faith bargaining, the Borough asserts that the expiration of thirty days without a settlement did not give Police the right to request arbitrators. In sum, the Borough contends that the statutory definition of impasse also requires that the bargaining have been conducted in good faith. The legislature did not make 'good faith' a condition of the right to request arbitrators under Section 4(a); and it is not for this Court to engraft such a condition on the statute."

The township contends that the language set forth in the New Cumberland decision is dictum and is further erroneous, contending that the Commonwealth Court has misinterpreted its own holding in the case of Lebanon Lodge, Fraternal Order of Police, No. 42 v. Lebanon, 5 Pa. Commonwealth Ct. 56, 288 A. 2d 835 (1972). In the Lebanon decision the Commonwealth Court declined to direct the parties to arbitration and directed that they engage in further collective bargaining. The facts, however, are clearly distinguishable. In the Lebanon case while admittedly there had been negotiations between the parties in

1968, the municipality unilaterally enacted an ordinance covering the subject of the police contract and nothing further transpired until 1971 when the FOP notified the city of its desire to enter into contract negotiations. The city at that point flatly refused to negotiate. This is not parallel to the factual situation that exists in North Huntingdon.

In summary, we find that the arbitration procedures set forth in Act 111 present a unique and specific procedure to be resorted to in the event of a bargaining impasse. We can conclude from the pleadings before the court that such an impasse has, in fact, taken place. We do not believe that it is necessary to resort to other legislation to interpret the clear and straightforward meaning of the arbitration provisions of Act 111, and we are not in a position to engraft a "good faith" condition precedent to the statute. Finally, we do not find the after the fact disavowment of the police representative by a few officers material to this issue. We are drawn to the conclusion, therefore, that the motion to strike the township's petition must be granted; and further, based upon the pleadings before the court, the township should be directed to strike an arbitrator and proceed to arbitration at this time. We decline, however, to make an award of counsel fees and costs as prayed for in the police petition.

## ORDER OF COURT

And now, December 9, 1981, the petition of North Huntingdon Township at no. 9186 of 1981 is hereby stricken.

At no. 9142 of 1981, defendants are directed to strike an arbitrator pursuant to Act 111 and to proceed to arbitration.