International Association of Firefighters, Local 463, by Merle Vizza, Joseph Pagliaro and James Corrigan, Trustees ad litem, v. City of Johnstown, Appellant.

Argued May 7, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard J. Green, Jr.,* for appellant.

*James R. DiFrancesco,* with him *DiFrancesco, & Di-Francesco,* for appellee.

OPINION BY JUDGE BLATT, September 10, 1975:

We are asked in this appeal from the Court of Common Pleas of Cambria County whether or not the timetable provisions for binding arbitration are mandatory under the Act of June 24, 1968, P. L. 237, 43 P. S. §217.1 et seq. (Act 111) which gives policeman and firemen employed by political subdivisions of the Commonwealth the right to collective bargaining.

Section 3 of Act 111, 43 P. S. §217.3, provides:

"Collective bargaining shall begin at least six months before the start of the fiscal year of the political subdivision . . . and any request for arbitration . . . shall be made at least one hundred ten days before the start of said fiscal year."

In this case, the International Association of Firefighters, Local 463 (Union) had timely notified the City of Johnstown (City ) on June 28, 1974, that it desired to negotiate a new collective bargaining agreement for the fiscal year beginning January 1, 1975. The record indicates, however, that the parties did not vigorously attempt to begin negotiations until September 9, 1974 at which time the Union requested in writing that the City set a time for negotiations. An initial negotiation session was then scheduled and held on September 21, 1974. By October 22, 1974 three additional sessions had been held without, however, resolving all of the issues raised by the Union de-

mands. On October 22, therefore, the parties had reached an impasse as determined by Section 4(a) of Act 111, 43 P. S. §217.4(a)[1] and the Union requested the appointment of a board of arbitrators as provided by that section. The City, however, refused on the basis that the time limit set for arbitration under Section 3, which it held to be mandatory, had expired on September 13, 1974. This action in mandamus was then filed by the Union to compel the City to appoint an arbitrator pursuant to Act 111. The court below, reasoning that the City had waived the 110-day requirement of the Act by its failure to commence timely negotiations upon the Union's earlier requests, ordered the City to appoint an arbitrator and directed the parties to proceed to arbitration. This appeal followed along with an application for supersedeas which we granted on February 11, 1975. Now, as to the merits of the appeal, we reverse.

This issue has twice been treated at the Common Pleas level where the timetable provisions in each case were held to be mandatory. *Borato v. Town Council of the Borough of Midland,* 48 D&C 2d 510 (1969); *Local 736 International Association of Firefighters v. City of Williamsport,* 47 D&C 2d 317 (1969). We believe that these

---

1. This section reads in part:

"(a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.

For purposes of this section, an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated."

cases were correctly decided and we take the same position here.

Under Act 111, policemen and firemen throughout the Commonwealth obtained bargaining rights which they had not previously enjoyed. A careful analysis of the provisions of the act reveals that the legislature intended to and did establish a very specific and detailed time schedule for the exercise of those rights, a timetable specifically keyed to the public employer's next fiscal year. For example, the times for the beginning of collective bargaining, for the request for arbitration and for the effective date for any legislation necessary to effectuate the agreement are all computed or determined by counting back from the first day of the subsequent fiscal year. In the case of arbitration, the legislature clearly intended and provided that all arbitration proceedings should be started early enough (*i.e.* 110 days) before January 17 to be completed in time for the governing body to prepare an appropriate budget and to enact the necessary implementing legislation before the beginning of the new fiscal year.

It is obvious under the act that time is of the essence in collective bargaining between policemen and firemen and their public employers. While we do not here decide that the legislative requirements cannot be waived by the mutual consent of the parties, doubtful as that may be, it is clear in this case that there was no such consent expressly given, nor can such be implied from any action of the City. Indeed, when asked to join in the appointment of arbitrators after September 13, the City expressly refused. Act 111, we believe, is designed to protect not only the rights of the collective bargaining agent and of the employer but of the public as well to efficient government through the timely adoption of municipal budgets and of necessary implementing legislation. If the Union here had felt that the City was dilatory in commencing negotiations, it should have taken appropriate action to

compel compliance within the timetable provisions of the act. Unfortunately, however, although perhaps in good faith, the Union was also dilatory, and has consequently forfeited here its right to binding arbitration by its failure to act in a timely way.

The order of the court below is, therefore, reversed.