360 A.2d 197
## INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 463, by Merle Vizza, et al., Appellants,

v.

## CITY OF JOHNSTOWN.

Supreme Court of Pennsylvania.

Submitted March 11, 1976.

Decided July 6, 1976.

James R. DiFrancesco, Johnstown, for appellant.

Richard J. Green, Jr., Johnstown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from an order of the Commonwealth Court which reversed the Court of Common Pleas of Cambria County and held that a writ of mandamus should not issue to compel arbitration between appellant and appellee. We granted appellant's petition for allowance of appeal.

The facts surrounding this appeal are as follows. On January 28, 1974, the International Association of Firefighters, Local 463 (appellant) notified the City of Johnstown (appellee) that it desired to negotiate a new union contract for the fiscal year beginning January 1, 1975. The parties did nothing further to effectuate a new agreement until September 9, 1974, when appellant, through its attorney, requested that a collective bargaining session be arranged and that the binding arbitration under the Act of June 24, 1968, P.L. 237, No. 111, § 1, 43 P.S. § 217.1, begin by September 13, 1974. Thereafter, an initial negotiating session was held on September 21, 1974; three more sessions were held, and finally on October 22, 1974, an impasse was reached and on the same day the union requested binding arbitration under § 4(a) of Act 111, 43 P.S. § 217.4(a). Appellee refused the request for arbitration and appellant sought a writ of man-

damus to compel arbitration. The Court of Common Pleas granted appellant's request; however, Commonwealth Court subsequently reversed the decision.

The sole issue raised in this appeal is whether § 3 of Act 111, 43 P.S. § 217.3, which provides:

> "Collective bargaining shall begin at least six months before the start of the fiscal year of the political subdivision or of the Commonwealth, as the case may be, and any request for arbitration, as hereinafter provided, shall be made at least one hundred ten days before the start of said fiscal year."

requires that binding arbitration between a union and a political subdivision of the Commonwealth begin at least one hundred ten days before the start of the fiscal year.

We are of the opinion that while the time scheme of the above statute is mandatory, there exists a valid reason that it will not preclude arbitration in the facts of this appeal. Appellant first notified appellee that it sought to negotiate a new labor contract on June 28, 1974, some four months before the deadline for binding arbitration, which was September 13, 1974. Appellee took no action to arrange a collective bargaining session. Appellant again on September 9, 1974, notified appellee of its request to negotiate a new union contract and at that time also stated that it intended to go to binding arbitration if an agreement was not reached. This second request for collective bargaining also pointed out that if the parties were to submit to binding arbitration, it would have to be done by September 13, 1974. Again appellee ignored the request and did not schedule the first negotiating session until September 21, 1974, thereby precluding appellant from meeting the time requirements set out by § 3 of Act 111, 43 P.S. § 217.3. The negotiations continued until October 22, 1974, when an impasse was reached and arbitration was requested by appellant and refused by appellee on the grounds that appellant had failed to comply with Section 3 of Act 111.

Appellee and the Commonwealth Court, citing *Borato v. Town Council, Bor. of Midland,* 48 Pa.D. & C.2d 510 (1969), and *Local 736, Firefighters v. Williamsport,* 47 Pa.D. & C.2d 317 (1969), took the position that the time requirements of Act 111 are mandatory and, therefore, the actions of appellee were proper. In both the cases cited by the Commonwealth Court in its opinion, there exists a distinction that takes the instant case out of their rationale. In *Borato,* a majority of the union accepted the agreement before the time for arbitration had expired and then sought to arbitrate after the time expired for arbitration. In *Williamsport,* the union did not request arbitration until the time period had elapsed, nor did the union bargain at all prior to the expiration of time for requesting arbitration. In the instant case, appellant, on June 28, 1974 and September 9, 1974, requested arbitration and in the latter request notified appellee that it intended to seek binding arbitration if an agreement was not reached. Thus, the instant case is distinguishable from both *Borato* and *Williamsport.*

We are of the opinion that appellant's request for collective bargaining sessions and appellee's dilatory procedure in scheduling the sessions relieve appellant of the burden of meeting the time scheme set out in Act 111. Moreover, the appellee is not prejudiced by the decision that they must arbitrate the labor contract. Appellee was aware in June of 1974 that the union wished to negotiate a new contract and in September of 1974 that it was seeking binding arbitration.

Order of the Commonwealth Court reversed and order of the Court of Common Pleas of Cambria County reinstated.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice (dissenting).

While it may be, as the majority suggests and the appellants argue, that the City of Johnstown was dilatory in the negotiation process, it is clear that appellant's failure to meet the time deadline for arbitration requests imposed by Section 3 of Act 111, Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. § 217.3 (Supp.1975–1976), is due to its own failure to preserve its rights under Act 111. I cannot agree that in such circumstances the mandatory time deadline for arbitration requests is rendered inoperative. I must therefore dissent.

Section 3 of the Act, 43 P.S. § 217.3 (Supp.1975–1976) provides:

> "Collective bargaining shall begin at least six months before the start of the fiscal year of the political subdivision or of the Commonwealth, as the case may be, and any request for arbitration, as hereinafter provided, shall be made at least one hundred ten days before the start of said fiscal year."

And Section 4 of the Act, 43 P.S. § 217.4(a) (Supp. 1975–1976) provides in part:

> "(a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration.

> "For purposes of this section, *an impasse or stalemate shall be deemed to occur in the collective bargaining process if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bar-*

*gaining proceedings have been initiated. . . ."*
(Emphasis added).

In this case the union initiated the collective bargaining proceedings by its letter to the City dated June 28, 1974. No settlement agreement was in hand thirty days thereafter, and a "stalemate or impasse" in the statutory sense had therefore occurred. It was then the right of either party, under Sec. 4 of the Act, supra, to request arbitration of the disputed issues. The right to make this request ended with the deadline set by Sec. 3 of the Act, i. e., 110 days before the start of the next fiscal year of the City. The time period available between those two statutorily fixed dates was forty-six days. In my view, either party which did not request arbitration in that period forfeited its right to do so.

As ably explained by Judge Blatt in her opinion for a unanimous Commonwealth Court, the mandatory time deadlines of Act 111 are grounded in sound public policy:

"Under Act 111, policemen and firemen throughout the Commonwealth obtained bargaining rights which they had not previously enjoyed. A careful analysis of the provisions of the act reveals that the legislature intended to and did establish a very specific and detailed time schedule for the exercise of those rights, a timetable specifically keyed to the public employer's next fiscal year. For example, the times for the beginning of collective bargaining, for the request for arbitration and for the effective date for any legislation necessary to effectuate the agreement are all computed or determined by counting back from the first day of the subsequent fiscal year. In the case of arbitration, the legislature clearly intended and provided that all arbitration proceedings should be started early enough (i. e. 110 days) before January 17 to be completed in time for the governing body to prepare an appropriate budget and to enact the necessary implementing legislation before the beginning of the new fiscal year.

"It is obvious under the act that time is of the essence in collective bargaining between policemen and firemen and their public employers. . . . Act 111, we believe, is designed to protect not only the rights of the collective bargaining agent and of the employer but of the public as well to efficient government through the timely adoption of municipal budgets and of necessary implementing legislation. If the Union here had felt that the City was dilatory in commencing negotiations, it should have taken appropriate action to compel compliance within the timetable provisions of the act. Unfortunately, however, although perhaps in good faith, the Union was also dilatory, and has consequently forfeited here its right to binding arbitration by its failure to act in a timely way." *International Association of Firefighters, Local 463 v. City of Johnstown*, 21 Pa.Cmwlth. 223, 226, 344 A.2d 754, 755–756 (1975).

For the foregoing reasons, I would affirm the Order of the Commonwealth Court.