Frank A. Bivighouse, Appellant *v.* Borough Council of the Borough of Telford, Apppellee.

Argued November 19, 1981, before President Judge CRUMLISH and Judges WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*J. Peirce Anderson,* with him, *Brian P. Sullivan,* for appellant.

*Mark E. Weand, Jr.,* with him *Richard Abell, Timoney, Knox, Hasson & Weand,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., May 20, 1982:

Frank A. Bivighouse has appealed from an order of the Court of Common Pleas of Montgomery County dismissing his mandamus action against the Borough Council of the Borough of Telford. By the action below, Bivighouse sought to compel the Borough Council to engage in collective bargaining with him, pursuant to "Act 111,"[1] concerning the terms and conditions of his employment for the year 1981. In dismissing the action, the lower court concluded that the collective bargaining sought was barred by a statutorily prescribed time limitation.

Appellant Bivighouse is employed by the Borough of Telford as a police officer, and had been so employed for five years prior to the commencement of the instant litigation. At the time of filing suit, Bivighouse held the rank of sergeant; and, as of that time, he and the chief of police were the only members of the Borough's police force.

At some point in June of 1980, Sergeant Bivighouse decided that he wished to negotiate with the Borough Council about the terms and conditions of his employment for the following year, 1981. On June 20, 1980, he met with the attorney for the Fraternal Order

---

[1] Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§217.1 *et seq.*

of Police (FOP) to consider a "list of areas" to be discussed with the Borough in collective bargaining under "Act 111." On June 23, 1980, the FOP attorney telephoned the Borough Manager and requested the scheduling of a "perfunctory meeting," which meeting, the attorney contemplated, would constitute a beginning of the bargaining process on behalf of Bivighouse. The attorney also requested that the meeting take place on or before June 30, 1980. The Borough Manager responded by insisting that the attorney put the request in writing, for the purpose of documentation and so that the request could be served on the several members of the Borough's "official family."

The FOP attorney focused on the date June 30, 1980, because of a statutory time provision affecting his client's right to bargain collectively about the terms of his 1981 employment. Section 3 of "Act 111" provides as follows:[2]

*Collective bargaining shall begin at least six months before the start of the fiscal year of the political subdivision* or of the Commonwealth, as the case may be, and any request for arbitration, as hereinafter provided, shall be made at least one hundred ten days before the start of the said fiscal year. (Emphasis added.)

For the Borough of Telford, the fiscal year begins on the first day of each calendar year. Thus, the Borough's fiscal year was to begin on January 1, 1981. By force of Section 3, above, any collective bargaining under "Act 111" concerning the Borough's 1981 fiscal year had to be started at least 6 months prior to the beginning of that fiscal year; meaning that any such bargaining had to be started no later than July 1, 1980.

On June 24, 1980, which was a Tuesday, the Borough Manager received a letter from the FOP attor-

---

[2] 43 P.S. §217.3.

ney reiterating the request for a meeting. The letter stated that it was necessary to have the meeting before June 30, 1980, and suggested that the meeting be a "perfunctory" one between Sergeant Bivighouse, the Borough Manager, and perhaps the Mayor, "as to commence the bargaining process." The letter also stated that the attorney and Sergeant Bivighouse were ready to meet with the Borough Manager and the Borough Council, at any time, to "outline" the Sergeant's requests relative to wages, benefits and working conditions. The letter did not, however, set forth any specific demands in that regard; nor had any such demands been made in the telephone call preceding the letter.

Upon receipt of the attorney's letter, the Borough Manager promptly mailed copies of it to the Mayor and members of the Borough Council. However, during the next few days, June 25 and 26, 1980, the Borough Manager was informed that the Mayor and two councilmen had separate and previously-made plans to depart the state on Friday, June 27th. One other councilman was already away and was not scheduled to return before the end of June. Indeed, the Borough Manager himself had previously arranged to leave for a convention on June 27th.

The next regular meeting of the Borough Council was scheduled for July 7, 1980, a date beyond the statutory deadline for commencing collective bargaining for the 1981 fiscal year. Nor could a special meeting of the Council be convened prior to the bargaining deadline, because of the unavailability of several officials and the impossibility of advertising such a meeting in a timely manner.

On June 27, 1980, the FOP attorney received a letter from the Borough Solicitor, rejecting the former's request for a "perfunctory meeting." According to the Solicitor's letter, the limited notice and conflicting

schedules of Borough officials made it impossible to have the requested meeting prior to the expiration of the statutory deadline.

The letter from the Borough Solicitor was followed by Bivighouse's suit in the lower court, for a writ of mandamus to compel the Borough to commence bargaining. In fact, the complaint was filed the very same day the letter was received by the FOP attorney, June 27, 1980. The complaint averred, in substance, that Bivighouse had done all that was legally necessary to obligate the Borough to enter into the bargaining process prior to the expiration of the statutory deadline for 1981. Companion to his complaint, Bivighouse also filed a motion for peremptory judgment pursuant to Pa. R.C.P. No. 1098.

On July 29, 1980, a hearing on the motion for peremptory judgment was held before Judge RICHARD S. LOWE. At that hearing Sergeant Bivighouse admitted that, at no time prior to June 23, 1980, had he expressed to any Borough official a desire to engage in collective bargaining concerning the year 1981. The FOP attorney testified that he and his client, Bivighouse, had not formulated or even arrived at any specific employment demands at their conference of June 20th. According to the attorney's further testimony, the "perfunctory meeting" he had requested of the Borough was intended solely to be a device to satisfy the statutory timetable, and he himself had no intention of attending the meeting. The attorney stated, moreover, that the "flushing out" of his client's bargaining demands would occur at sessions subsequent to the requested first meeting.

On the basis of the hearing and the parties' briefs, Judge LOWE entered an order, dated August 13, 1980, denying relief to the plaintiff and dismissing the mandamus action. That order was followed by the instant appeal.

Before this Court, appellant Bivighouse argues that his attorney's oral and written requests, of June 23 and 24, 1980, for the holding of a meeting on or before June 30, 1980, constituted a pre-deadline commencement of the bargaining process, in which, the Borough was obliged to join. In that regard the appellant adds that his request, for a pre-deadline start of bargaining, was intensified by the filing of the mandamus action on June 27, 1980.

"Act 111" does not define what constitutes the beginning of collective bargaining insofar as the Section 3 timetable is concerned. Nor have we found an express judicial definition in that respect. Yet, there are decisions which, by necessary implication, support the conclusion that the efforts of appellant Bivighouse to obtain a first meeting were sufficient to initiate the bargaining process prior to the deadline for fiscal year 1981.

Especially significant is the decision of the Pennsylvania Supreme Court in *International Association of Firefighters, Local 463 v. City of Johnstown,* 468 Pa. 96, 360 A.2d 197 (1976). Although the express issue in that case was the timeliness of a union's request for *arbitration* under "Act 111," the Court's decision that the request should have been granted necessarily implied a determination concerning the start of the bargaining process in the case. As will be explained further, this decisional implication follows from the very relationship, under "Act 111," between collective bargaining and the right of arbitration.

In *International Association of Firefighters* the Supreme Court recognized that the time provisions in Section 3 of "Act 111" are mandatory, both for the beginning of collective bargaining and the right to request arbitration. It is also clear that the right of arbitration, under "Act 111," arises only when the collective bargaining process has proved fruitless, that is,

when the process has reached an impasse or stalemate. In other words, the right of arbitration arises only if, and after, collective bargaining has been initiated.[3] Since by express statutory mandate bargaining must be commenced, if at all, before the expiration of a certain deadline, there can be no right of arbitration unless there first had been a timely initiation of collective bargaining.

In *International Association of Firefighters,* the union sought to negotiate a new labor contract with the city-employer for the 1975 fiscal year, which was to begin on January 1, 1975. For the Supreme Court to hold, as it did, that the union was entitled to pursue arbitration, the Court also must have meant that collective bargaining had been timely begun, or, put differently, that the union had done enough to initiate bargaining prior to the deadline for the year in question. Although the Supreme Court's actual decision was one excusing the untimeliness of the union's request for arbitration, that result could not validly have been reached unless there had been a timely initiation of collective bargaining. In *International Association of Firefighters,* the only effort to initiate bargaining prior to the statutory deadline was the union's notice to the city that it desired to negotiate a new contract for the 1975 fiscal year. That notice was first given by the union on June 28, 1974, which was only 3 days before the deadline for the commencement of bargaining.

As we read *International Association of Firefighters,* the Supreme Court must have determined that the union's notice of June 28, 1974, was sufficient to begin the bargaining process for the 1975 fiscal year. Al-

[3] *See, e.g., Flood v. Borough of Canonsburg,* 28 Pa. Commonwealth Ct. 248, 368 A.2d 348 (1977) ; *Lebanon Lodge, Fraternal Order of Police, No. 42 v. Lebanon,* 5 Pa. Commonwealth Ct. 56, 288 A.2d 835 (1972).

though there was a dissent in the case, as to the result reached, the dissenting opinion expressly observed that the union's notice of June 28, 1974, initiated the collective bargaining proceedings.[4]

In *Hartshorn v. County of Allegheny,* 460 Pa. 560, 333 A.2d 914 (1975), the Supreme Court affirmed an order directing the county commissioners and district attorney to engage in arbitration under "Act 111" with county detectives. The detectives had, on September 10, 1971, given notice of their intention to seek arbitration, after the county officials had failed to respond to the detectives' request to enter into collective bargaining. The county officials also failed to respond to the arbitration request. In holding that the county was properly ordered to engage in arbitration with the detectives, the Supreme Court implicitly decided that there was a timely initiation of the collective bargaining process. In *Hartshorn* the only effort by the detectives to initiate collective bargaining was their letter, dated June 24, 1971, indicating to the county officials that they wished to engage in bargaining under "Act 111."[5]

Based on our reading of *International Association of Firefighters* and *Hartshorn,* we must conclude in the instant case that appellant Bivighouse had initiated the collective bargaining process prior to the July 1, 1980 deadline; and thus the Borough Council had a

---

[4] Our own decision in the *International Association of Firefighters* case, 21 Pa. Commonwealth Ct. 223, 344 A.2d 754 (1975), though reversed on other grounds, also treated the union's letter of June 28, 1974, as being timely notice to the city-employer.

[5] In *Hartshorn* the county's objection to arbitration was not based on an issue of timeliness. Furthermore, the Supreme Court's opinion does not expressly state for what year the detectives sought to bargain, or on what date the county's fiscal year began. Nonetheless, the statutory relationship between the right of arbitration and the commencement of bargaining would apply.

legal duty to engage in the bargaining process relative to the 1981 fiscal year. In the case at bar, Bivighouse not only made a request for collective bargaining to begin prior to the expiration of the statutory deadline, he also filed a lawsuit prior to the deadline demanding that bargaining begin immediately.

In denying relief to Bivighouse, the court below put much reliance on our decision in *Plymouth Township Police Department v. Plymouth Township Commissioners*, 27 Pa. Commonwealth Ct. 64, 366 A.2d 316 (1976). In that case, we reversed an order directing the township to engage in arbitration with its police relative to the 1975 fiscal year, which was to begin on January 1, 1975. Our opinion in the *Plymouth Township* case stated two alternative bases for freeing the township of a legal duty to arbitrate: (1) the request for arbitration had not been timely made; and (2) collective bargaining had not been initiated within the statutory deadline.

In *Plymouth Township,* the attorney for the police sent a letter to the township council, dated June 25, 1974, expressing the desire of his clients to negotiate a new collective bargaining agreement concerning the next fiscal year, 1975. Beyond expressing that wish, the letter did no more than state that the attorney would call later to arrange a meeting at which demands would be presented. The attorney did not present any demands on behalf of the police until August 30, 1974, a date beyond the deadline for the start of bargaining. Moreover, there was no meeting between the two sides until September 19, 1974. On October 1, 1974, the police demanded arbitration; and the township refused on the ground that the request for arbitration was beyond the deadline for arbitration under Section 3 of "Act 111." Upon those facts, we decided that the police had no right of arbitration for the fiscal year in question.

Concededly, there is language in the *Plymouth Township* opinion suggesting that mere notice by employees of their desire to negotiate a labor agreement is not enough to constitute a pre-deadline initiation of bargaining. Yet, in the *Plymouth Township* case there was an important factual element that is not present in the case at bar, nor indicated to have been present in *International Association of Firefighters* or *Hartshorn*: In *Plymouth Township* the employees, in addition to not presenting any demands prior to the deadline for the start of bargaining, also assumed the burden of arranging the first bargaining session and then made no attempt to arrange any such meeting before the expiration of the deadline.

We cannot applaud the appellant's almost last-minute pursuit of his right to bargain. He waited until just about 11 days prior to the statutory deadline to even tell his representative of his desire to exercise that right; and, his wish in that regard was not communicated to the Borough until just 8 days before the deadline. Moreover, the appellant had not even arrived at any specific employment demands when his request for a first meeting was made.

Yet, our Supreme Court seems to have approved such a midnight-hour approach: In *International Association of Firefighters* the request for collective bargaining was not made until *3 days* prior to the statutory deadline for the start of bargaining. As an additional matter, it would be useless to hold that the absence of specific job demands obviates the efficacy of a request for the start of bargaining. Such a rule would merely foster the practice of making artificial demands as a device to beat the deadline; and such demands would be, in effect, nothing other than a simple request for bargaining.

For the reasons set forth, we are constrained to reverse the order of the lower court in this case.

## ORDER

AND Now, the 20th day of May, 1982, the order of the Court of Common Pleas of Montgomery County at No. 80-11232, dated August 13, 1980, is hereby reversed.

This decision was reached prior to the resignation of Judge MENCER.

Judge MACPHAIL concurs in the result only.

Judge PALLADINO did not participate in the decision in this case.