# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Gettysburg         :
                                :
             v.                :    No. 1768 C.D. 2013
                                :    Argued: June 16, 2014
Teamsters Local No. 776        :
                                :
Appeal of: International Brotherhood    :
of Teamsters, Local 776         :

BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE MARY HANNAH LEAVITT, Judge

OPINION BY
JUDGE LEADBETTER                    FILED: October 29, 2014

The International Brotherhood of Teamsters, Local No. 776 (Union) appeals from the order of the Court of Common Pleas of Adams County (trial court) that granted the petition filed by the Borough of Gettysburg (Borough) seeking to partially vacate the interest arbitration award to the extent that it increased wages of the Borough police officers for the fiscal year 2011. The Union challenges the trial court's conclusion that the arbitration panel did not have jurisdiction to render such award under the Act of June 24, 1968, P.L. 237, commonly known as Act 111, 43 P.S. §§ 217.1 - 217.10. We affirm.

The record reveals the following relevant facts. The collective bargaining agreement (CBA) between the Borough and the Gettysburg Police Officers Association (Association), the former collective bargaining representative of the Borough police officers, was scheduled to expire on December 31, 2009. In July 2009, the Borough and the Association began negotiating terms of a new

CBA. The Union was subsequently elected as the Borough police officers' new collective bargaining representative and certified by the Pennsylvania Labor Relations Board in February 2010.

On June 14, 2010, the Union's business agent, Mark Andreozzi, sent the Borough's counsel, Gretchen K. Love, Esquire, a letter inviting the Borough to begin collective bargaining for a new CBA. He enclosed a proposed CBA with the letter. Fifteen days later on June 29, the Union's counsel, Ira H. Weinstock, Esquire, asked the American Arbitration Association (AAA) to send him and Attorney Love a list of three arbitrators for an interest arbitration.[1] Reproduced Record (R.R.) at 200a. In September, Andreozzi, Attorney Love and the Borough manager, Florence Ford, met for collective bargaining. Attorney Love subsequently received a list of three arbitrators from the AAA. She then sent Attorney Weinstock letters on November 18 and December 29, 2010, stating that the Borough would not participate in selecting a panel of arbitrators because the Union failed to follow the required time frame in Act 111 in obtaining the list of arbitrators and that the Borough was willing to continue to bargain in good faith, as required by Section 2 of Act 111, 43 P.S. § 217.2.[2] R.R. at 202a, 204a and 205a.

In a memo sent to the Union on June 8, 2011, the Borough manager,

---

[1] An interest arbitration occurs when an employer and its employees are unable to agree on terms of a CBA. *City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 558 n.2 (Pa. 2010). A grievance arbitration, on the other hand, occurs when the parties disagree on interpretation of an existing CBA. *Id.* An interest arbitration is an extension of collective bargaining process. *City of Butler v. City of Butler Police Dep't, Fraternal Order of Police, Lodge #32*, 780 A.2d 847, 849 n.3 (Pa. Cmwlth. 2001).

[2] Section 2 of Act 111 provides that "[i]t shall be the duty of public employers and their policemen and firemen employes to exert every reasonable effort to settle all disputes by engaging in collective bargaining in good faith and by entering into settlements by way of written agreements and maintaining the same."

2

Ford, proposed wage increases of 3% for 2011, 2% for 2012 and 2.5% for 2013 for the police officers, and their 10% pre-tax contribution towards health insurance. Union's Exhibit No. 2; R.R. at 349a. The Union rejected Ford's proposal. The Union's agent, Andreozzi, then sent Ford a letter on June 8, 2011, stating that the parties' good-faith negotiations resulted in a tentative agreement, except compensation, insurance, clothing and equipment, pension, and the term of an agreement. Union's Exhibit No. 4; R.R. at 535a. He further stated that the parties had agreed that "the next natural and logical step in pursuing a final remedy [was] to use the existing list of Arbitrators." *Id.* Attorney Love responded that the Borough was willing to participate in an interest arbitration utilizing the arbitration panel obtained in November 2010, but that the Borough "reserve[d] its right to raise any and all procedural deficiencies as part of this process." Attorney Love's June 16, 2011 Letter (Borough's Exhibit No. 2); R.R. at 346a. After Attorney Love (the arbitrator for the Borough) and Attorney Weinstock (the arbitrator for the Union) each eliminated one name from the list of arbitrators, Robert Gifford became the third arbitrator and the arbitration panel's chairperson.[3]

After an arbitration hearing held on August 17, 2011, Arbitrator Gifford issued an arbitration award covering the period from January 1, 2011 through December 31, 2013. The award included 4% wage increases for 2011 and

---

[3] An arbitration panel is composed of three arbitrators: one appointed by the public employer, one appointed by the union, and one agreed upon by the public employer and the union. Section 4(b) of Act 111, 43 P.S. § 217.4(b). If a third arbitrator has not been appointed after 10 days from the appointment of the two arbitrators by the public employer and the union, then either arbitrator may request the AAA to furnish a list of three arbitrators. *Id.* The arbitrator appointed by the public employer first eliminates one name from the list. *Id.* The arbitrator appointed by the union eliminates another name from the list. The individual remaining on the list will be the third arbitrator and act as chairperson of the arbitration panel. *Id.*

2012, 3.99% wage increases for 2013, and improved benefits. Attorney Weinstock concurred in the award. Attorney Love dissented, stating that the majority panel did not decide the procedural issue raised by the Borough and that the arbitration panel lacked jurisdiction to award wage increases for the fiscal year 2011 due to the Union's noncompliance with the procedural requirements of Act 111. In the concurring opinion, Attorney Weinstock stated that the evidence indicated that "the procedural issue raised by the Borough of Gettysburg was waived by the parties in negotiations and was not pursued by the Borough." R.R. at 30a. The arbitration panel retained jurisdiction until the parties' ratification and execution of the new CBA.

The Borough filed a petition to partially vacate the interest arbitration award to the extent that it granted the police officers 4% wage increases and step movements for 2011. The Borough alleged that the arbitration panel lacked jurisdiction to render such award due to the Union's failure to comply with the requirements of Act 111 for requesting an arbitration. The Borough noted that the Union never declared an impasse in the bargaining and never served written notice of arbitration containing specifications of the issues upon the Borough Council president. The Union filed an answer, alleging that the Borough waived the issue.

Under Section 3 of Act 111, 43 P.S. § 217.3, collective bargaining between a public employer and its police officers or firefighters must begin "at least six months before the start of the fiscal year of the [public employer]." The Borough's fiscal year 2011 began on January 1, 2011. Section 4(a) of Act 111, 43 P.S. § 217.4(a), further provides:

> If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches *an impasse and stalemate*, or if the appropriate lawmaking body does not

4

approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, *after written notice to the other party containing specifications of the issue or issues in dispute,* may request the appointment of a board of arbitration. [Emphasis added.]

An impasse or stalemate is deemed to occur in the collective bargaining process "if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days after collective bargaining proceedings have been initiated." *Id.* A request for arbitration must be made at least 110 days before the start of the fiscal year. Section 3 of Act 111. In addition, the police officers and firefighters must serve written notice of arbitration containing specifications of issues in dispute "upon the head of the governing body of the local governmental unit involved." Section 5 of Act 111, 43 P.S. § 217.5.

The trial court remanded the matter to Arbitrator Gifford, directing him to amend the award to address whether the Borough raised the jurisdiction issue, whether the Union argued that the Borough waived the issue, any evidence presented by the parties to support their positions, and his decision on the issues. On remand, Arbitrator Gifford sent the trial court a letter, stating that the Borough raised the jurisdiction issue and that the Union claimed that the Borough waived the issue. He further stated that he was not permitted to discuss the arbitration panel's deliberations during the executive sessions. As to the evidence presented by the parties and the arbitration panel's decision on the issues, he referred the trial court "to the Award that includes dissenting and concurring opinions." R.R. at 348a.

Because Arbitrator Gifford refused to clarify the record, the trial court held hearings to allow the parties to present the evidence presented at the

5

arbitration hearing and to determine whether such evidence, if believed, would support the arbitration panel's jurisdiction to award wage increases for 2011. The Borough presented the testimony of Attorney Love and Ford, an arbitration packet, and Attorney Love's June 16, 2011 letter reserving the Borough's right to raise procedural deficiencies. The Union presented the testimony of Andreozzi and two Union shop stewards, an arbitration presentation binder, and Ford's June 8, 2011 memo proposing terms of a new CBA.

The trial court concluded that the arbitration panel did not have jurisdiction to address contract terms for 2011 due to the Union's failure to comply with the mandatory requirements of Act 111 for requesting an arbitration and that the Borough's attempts to negotiate a new CBA in good faith does not constitute a waiver of its procedural objection. The court found that the Union failed to serve written notice of arbitration containing specifications of issues in dispute upon the Borough Council president. The court further found that Andreozzi's June 8, 2011 letter, stating the parties' agreement to use the list of arbitrators obtained in November 2010 to resolve the remaining issues, even if considered to be proper written arbitration notice, was untimely for the fiscal year 2011 because it was dated 159 days after the beginning of the fiscal year 2011. The court accordingly granted the Borough's petition and vacated the arbitration award to the extent of granting wage increases for 2011. The Union's appeal to this Court followed.

The Union argues that the Borough waived its objection to the Union's noncompliance with Act 111's requirements, relying on Ford's June 8, 2011 letter proposing terms of a new CBA. The Union asserts that the arbitration panel was aware of the Borough's objection to its jurisdiction and the Union's waiver claim and that "the only logical conclusion" to be drawn from the arbitration award is

6

that the majority of the arbitration panel rejected the Borough's objection to its jurisdiction. Union's Brief at 19. The Union further argues that if the arbitration panel did not decide the issues, the court should have remanded to the arbitration panel which retained jurisdiction until the parties' ratification and execution of the new CBA. Finally, the Union claims that Act 111 prohibits the Borough from appealing the arbitration award.

The legislature enacted Act 111 to make the rights of a public employer and its police officers and firefighters more equitable by denying the police officers and firefighters the right to strike but granting them the right to collectively bargain terms and conditions of employment. Section 1 of Act 111, 43 P.S. § 217.1; *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 997 (Pa. 2006). Section 7(a) of Act 111, 43 P.S. § 217.7(a), provides that the determination of the majority of the arbitration panel "shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved" and that "[n]o appeal therefrom shall be allowed to any court." An arbitration award is nonetheless subject to the court's narrow certiorari scope of review. *City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 563 (Pa. 2010). Under such review, the court may inquire into only (1) the arbitrator's jurisdiction, (2) the regularity of the proceedings, (3) an excess of the arbitrator's powers, and (4) deprivation of constitutional rights. *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 938 A.2d 225, 229 (Pa. 2007).[4] Such limited review of arbitration awards "embodies a balancing of the legislative

---

[4] Unlike the "narrow" certiorari review, the "broad" certiorari review permits review of the entire arbitration panel's record, including testimony and evidence. *Town of McCandless*, 901 A.2d at 995 n.8.

policy objective of shielding arbitration awards from judicial modification, with the residual need to avoid giving arbitrators unlimited powers." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 12 A.3d 346, 355 (Pa. 2011).

A preliminary determination of whether the issue involved implicates one of the four areas encompassed by narrow certiorari is subject to the court's non-deferential, plenary standard of review, unless that determination itself depends, to some extent, upon arbitral fact-finding or a construction of the relevant CBA. *Town of McCandless,* 901 A.2d at 1000; *City of York v. Int'l Ass'n of Firefighters, Local Union No. 627*, 35 A.3d 822, 825 (Pa. Cmwlth. 2011).

Subject matter jurisdiction is "a prerequisite to the exercise of the power to decide a controversy." *Pickford v. Pub. Util. Comm'n*, 4 A.3d 707, 713 (Pa. Cmwlth. 2010). The inquiry posed by the jurisdiction prong of narrow certiorari is whether an arbitration panel "act[ed] in that general class of controversies that the law empowers it to consider." *Int'l Ass'n of Firefighters, Local 22,* 999 A.2d at 564 [citing *Dauphin Deposit Trust Co. v. Myers*, 130 A.2d 686, 694 (Pa. 1957)]. To determine whether an arbitration panel had subject matter jurisdiction to render an award, the court looks to the Pennsylvania Constitution and the enabling statute, Act 111, that created an arbitration panel. *Int'l Ass'n of Firefighters, Local 22*, 999 A.2d at 564.

Article 3, Section 31 of the Pennsylvania Constitution, Pa. CONST. art III, § 31, authorizes the General Assembly to "enact laws which provide that the findings of panels or commissions, selected and acting *in accordance with law* for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties …." [Emphasis added.] The phrase "in accordance with law" in Article

3, Section 31 "means that the arbitrators, in conducting their hearings and making an award … must adhere to the mandates of the enabling legislation." *City of Washington v. Police Dep't of Washington*, 259 A.2d 437, 442 (Pa. 1969).

In granting police officers and firefighters the right to collective bargaining and creating an arbitration panel to resolve issues in dispute, Act 111 establishes "strict timetables" and prerequisites for collective bargaining, for an arbitration request, and for a legislative action necessary to implement an arbitration award. *Pa. State Park Officers Ass'n v. Pa. Labor Relations Bd.*, 854 A.2d 674, 682 (Pa. Cmwlth. 2004). Collective bargaining must begin at least 6 months before the start of the next fiscal year. Section 3 of Act 111. If an impasse has been reached after negotiating for at least 30 days, either party may request an appointment of an arbitration panel after providing the other party written notice containing specifications of issues in dispute. Section 4(a) of Act 111. A request for arbitration must be made at least 110 days before the next fiscal year. Section 3 of Act 111. In addition, the police officers and firefighters must serve written notice of arbitration upon the head of the local governing body. Section 5 of Act 111. Any legislation necessary to implement an arbitration award must be enacted within one month after publication of the award to be effective the first day of the fiscal year following the fiscal year during which such legislation was enacted. Section 7(b) of Act 111.

Under Act 111, time is of the essence in collective bargaining. *Int'l Ass'n of Firefighters*, *Local 463 v. City of Johnstown*, 344 A.2d 754, 755 (Pa. Cmwlth. 1975), *rev'd on other grounds,* 360 A.2d 197 (Pa. 1976). The time schedules in Act 111 are "keyed to the public employer's next fiscal year" in order to provide the local governing body sufficient time "to prepare an appropriate

9

budget and to enact the necessary implementing legislation before the beginning of the new fiscal year." *Id.* Compliance with the time requirements of Act 111, therefore, "is mandatory." *Int'l Ass'n of Firefighters, Local 463 v. City of Johnstown*, 360 A.2d 197, 198 (Pa. 1976). The parties must strictly adhere to the bargaining schedules in Sections 3 and 4 of Act 111 "in order to perfect the right to arbitration." *Delaware Cnty. Lodge #27, Fraternal Order of Police v. Pa. Labor Relations Bd.*, 461 A.2d 1337, 1340 (Pa. Cmwlth. 1983).

Further, the requirement in Section 4(a) of Act 111 that a party requesting an arbitration must provide the other party written notice containing specifications of issues, "is a codification of the longstanding common law rule that arbitrators must decide all the issues presented to them, and *only those issues*." *In re Arbitration Award between Lower Yoder Twp. Police & Lower Yoder Twp.*, 654 A.2d 651, 653 (Pa. Cmwlth. 1995) (emphasis added). An interest arbitration can be triggered only by a party giving the other party written notice of arbitration. *Id.* An interest arbitration award can embrace only the issues which the party requesting an arbitration has specified in the written notice of arbitration. *Id*.

The undisputed evidence established that the Borough and the Union began collective bargaining on June 14, 2010, more than six months before the start of the fiscal year 2011. The Union, however, failed to comply with Section 4(a) of Act 111 by seeking a list of arbitrators on June 29, 2010 without bargaining with the Borough for at least 30 days, without declaring an impasse, and without listing any issues in dispute. In addition, the Union never served upon the Borough Council president written notice of arbitration containing specifications of issues in dispute, as required by Section 5 of Act 111. The Union did not properly demand an arbitration 110 days before the beginning of the fiscal year 2011, September 12,

10

2010, as required by Section 3 of Act 111. Andreozzi's June 8, 2011 letter, stating that the parties agreed to resolve the remaining issues by arbitration, cannot constitute proper written notice of arbitration for the fiscal year 2011 because it was dated more than 5 months after the start of the fiscal year 2011.

Because the Union failed to timely provide written notice of arbitration containing specifications of issues in dispute to the Borough and serve it upon the Borough Council president, the arbitration panel lacked jurisdiction to award the Borough police officers wage increases for the fiscal year 2011.[5] *See City of Phila. v. Fraternal Order of Police, Lodge No. 5,* 768 A.2d 291, 296 (Pa. 2001) (holding that the arbitrator was without jurisdiction to consider an issue which was not included in the written notice of arbitration and was added on the first day of the arbitration hearing); *Plymouth Twp. Police Dep't v. Plymouth Twp. Comm'rs*, 366 A.2d 316, 318 (Pa. Cmwlth. 1976) (holding that the township could not be compelled to submit the disputes to binding arbitration because collective bargaining did not begin at least six months before the start of the new fiscal year and because the demand for binding arbitration was not made at least 110 days before the start of the new fiscal year).[6]

---

[5] In light of Arbitrator Gifford's refusal on remand to clarify the record and to indicate the majority arbitration panel's decision on the jurisdiction issue, it would have been futile for the trial court to re-remand to the arbitration panel for a determination of the issue. Even if we accept the Union's position that the majority of the arbitration panel decided the jurisdiction issue by rendering the arbitration award, the evidence does not support the arbitration panel's jurisdiction.

[6] The Supreme Court previously excused a union's failure to comply with the mandatory timetables in Sections 3 and 4(a) of Act 111, finding that the city's "dilatory procedure" in scheduling collective bargaining sessions prevented the union from complying with the timetables. *Int'l Ass'n of Firefighters, Local 463*, 360 A.2d at 198. Here, the Union does not allege, and the record does not demonstrate, that the Union's failure to comply with the requirements in Act 111 was caused by dilatory action of the Borough.

11

Without disputing its failure to comply with the requirements of Act 111 in demanding an arbitration, the Union argues that the Borough waived its objection to the arbitration panel's jurisdiction, relying on the Borough manager's June 8, 2011 letter proposing terms of a new CBA. The parties' good-faith negotiations, however, are irrelevant to the issue of the arbitration panel's subject matter jurisdiction. *Arbitration Award between Lower Yoder Twp. Police & Lower Yoder Twp.*, 654 A.2d at 654. It is well established that "[t]he issue of subject-matter jurisdiction cannot be waived and may be raised at any time by the parties or by the court *sua sponte*." *Hous. Auth. of Pittsburgh v. Van Osdol*, 40 A.3d 209, 213 (Pa. Cmwlth. 2012).[7]

In conclusion, the evidence established the Union's noncompliance with the mandatory requirements of Act 111, thereby depriving the arbitration panel of subject matter jurisdiction to award the Borough police officers wage increases for 2011. Accordingly, the trial court's order is affirmed.

 

 

**BONNIE BRIGANCE LEADBETTER,**
Judge

---

[7] Unlike subject matter jurisdiction, personal jurisdiction may be waived for failure to object thereto. *Wagner v. Wagner*, 768 A.2d 1112, 1119 (Pa. 2001); *Tracy v. Unemployment Comp. Bd. of Review*, 23 A.3d 612, 616 n.3 (Pa. Cmwlth. 2011).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Borough of Gettysburg | : | |
| | : | |
| v. | : | No. 1768 C.D. 2013 |
| | : | |
| Teamsters Local No. 776 | : | |
| | : | |
| Appeal of: International Brotherhood | : | |
| of Teamsters, Local 776 | : | |

# **O R D E R**

AND NOW, this 29th day of October, 2014, the order of the Court of Common Pleas of Adams County in the above-captioned matter is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge