IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh            :
                                      :
           v.               :    No. 521 C.D. 2014
                                        :    Argued: November 12, 2014
Fraternal Order of Police Fort Pitt  :
Lodge No.1,                  :
(on-duty and off-duty pay for events), :
              Appellant        :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE P. KEVIN BROBSON, Judge

OPINION
BY JUDGE LEAVITT                              FILED: March 12, 2015

        The Fraternal Order of Police Fort Pitt Lodge No. 1 (Union) appeals an order of the Court of Common Pleas of Allegheny County reversing an Act 111[1] grievance arbitration award that required the City of Pittsburgh to pay on-duty police officers working at large-scale events the same wages that off-duty police officers receive from private employers to do the same work. The trial court concluded that the award was not rationally related to the collective bargaining agreement and infringed upon the City's managerial prerogative. The Union argues that the trial court erred and exceeded the narrow *certiorari* scope of review applicable to Act 111 arbitration. For the reasons that follow, we affirm.

---

[1] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§217.1-217.10, commonly referred to as Act 111, applies to unionized police and fire personnel.

The Union and the City executed a collective bargaining agreement (CBA) called the "Working Agreement" that covered the period January 1, 2010, through December 31, 2014. The CBA addresses the compensation for on-duty police officers at several points.[2] Relevant hereto is Section 24 of the CBA, entitled "Secondary Employment," which permits police officers to engage in secondary employment when they are off-duty. As explained by the trial court, "secondary employment" involves the performance of safety, peacekeeping and traffic control duties both before and after large-scale events in the City such as concerts and sporting events. The private businesses that engage the services of off-duty police officers for secondary employment are called "secondary employers," and they are responsible for the compensation of these off-duty officers.[3] Reproduced Record at 2a: 137-141 (R.R. ___).

Section 24 of the CBA states that all secondary employment is voluntary and "[n]o police officer will be compelled to work for a Secondary Employer." R.R. 1a: 144. The City's Special Events Office assigns officers who volunteer for secondary employment, and secondary employers can request the assignment of specific officers. Section 24 specifies the pay for secondary employment as follows:

---

[2] Section 6 establishes basic compensation; Section 7 establishes the terms of longevity pay; Section 8 establishes shift differential pay; Section 9 establishes overtime pay; and Section 10 establishes holiday pay. Reproduced Record at 1a: 32-50.

[3] The City was deemed financially distressed and began operating under a recovery plan in 2004 under the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§11701.101 – 11701.501. The City explains that "[t]hrough the Act 111 collective bargaining process, the City initiated the secondary employment program as a means to maintain necessary services while shifting some of the costs of law enforcement to private employers who utilize police officers' services." City's Brief at 14. According to the City, private businesses paid approximately $7.2 million in wages through the secondary employment program in 2013.

> Police officers engaged in secondary employment will receive the rate of pay for such work as agreed upon by and between the City and the Secondary Employer.

*Id*. The "agreed upon rate of pay" for secondary employment is the overtime rate for a fourth year police officer, which is $41.12 per hour. Arbitrator's Award at 3-4. Any officer working secondary employment is paid that hourly wage, regardless of his rank or seniority.

The City often directs on-duty officers to do traffic control at a large public event where off-duty officers are also working in a secondary employment assignment. The Union does not challenge the City's right to order on-duty police officers to work these events, who are paid their normal wages as set forth in the CBA.

On February 17, 2013, the City assigned Officer Robert Swartzwelder to direct traffic before a sporting event during his regular on-duty shift. Approximately 60 feet away, an off-duty officer was also directing traffic on behalf of a secondary employer. The City paid Swartzwelder the rate of pay owed under the CBA; the off-duty officer working secondary employment was paid the secondary employment rate of pay, which was higher than Swartzwelder's hourly wage. Swartzwelder filed a grievance, demanding to be paid the secondary employment rate of pay. By September 1, 2013, Officer Swartzwelder had filed six more similar grievances. In addition, Officer David Lincoln filed a grievance on August 18, 2013, stating that he too directed traffic at a sporting event while on-duty, for which he earned less than off-duty officers who were directing traffic as secondary employment.

The City denied the grievances. The Union and City then proceeded to grievance arbitration. The arbitrator identified the issue as follows:

3

> [W]hether on-duty officers who are assigned to work with off-duty officers who have volunteered to work large scale events for secondary employers should be paid at the same rate of pay that the off-duty officers are receiving.

Arbitrator's Decision at 6.

At the hearing before the arbitrator, Officer Swartzwelder testified that he has been a police officer for 26 years. Off-duty officers working secondary employment earn over $13 more per hour than he earns while on-duty. This means that a new officer standing near Swartzwelder and doing the same work can be paid considerably more than Swartzwelder earns while on-duty.[4]

On September 30, 2013, the arbitrator issued an award sustaining the grievances on a prospective basis, effective immediately. The award directed the City to pay on-duty police officers working large events the same rate being paid to off-duty officers working those events on a secondary employment detail. The arbitrator concluded that it would be unfair to pay on-duty officers less than those doing secondary employment, explaining as follows:

> [I]t would appear to be inequitable for an on-duty officer to be called to supplement the secondary off-duty officers for an event such as a large concert or an event, for example, at the Consol Energy Center but be paid at a lesser rate of pay…. This raises a valid and legitimate pay concern for an on-duty officer…. It does not appear justifiable for these on-duty officers doing the same work at the same event as the secondary officers yet receiving a lesser rate of pay. Therefore, it is my conclusion, based upon the grievances and the arguments presented, that on-duty officers sent to work special events should be paid at the same rate of pay as the rate being paid to officers working the special events as a secondary employment detail.

---

[4] No transcript was made at the hearing. This summary of testimony is taken from the arbitrator's discussion of the facts.

4

Arbitrator's Decision at 6-7.

The City appealed. The trial court vacated the arbitrator's award and dismissed the grievances. The trial court held that the arbitrator exceeded his authority because his award (1) was not rationally related to the terms and conditions of the grievants' employment under the CBA and (2) infringed upon the City's managerial prerogative to negotiate the compensation for on-duty officers as set forth in the CBA.[5] The trial court concluded that the arbitrator violated Section 5(C)(3)(b) of the CBA, which states that the arbitrator "shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the [CBA]." CBA at 25; R.R. 1a: 29. The arbitrator disregarded the CBA's term on the compensation owed to on-duty police officers and instead made a judgment as to what the CBA *should* say as opposed to what it *actually* says. The trial court observed that the arbitrator did not interpret the CBA, which was evidenced by the fact that he did not, because he could not, point to any language from the CBA to support his analysis.

The trial court also determined that the arbitrator's invocation of principles of equity and fairness had no place in a grievance arbitration, which is governed by the language of the CBA.[6] The trial court criticized the arbitrator's comparison of the pay owed to off-duty officers working secondary employment to

---

[5] Noting that arbitrators properly resolve grievances concerning the appropriate pay rate for police officers, the trial court concluded that the arbitrator did not exceed the scope of his jurisdiction. The trial court declined to reach the question of whether the arbitration award mandated the City to perform an illegal act.

[6] The trial court noted that according to the Union, the parties had agreed on an award drafted primarily by the Union's counsel, and the arbitrator's award was consistent with that draft. The trial court noted this only as a possible explanation for why the arbitrator's award relied so heavily on principles of equity instead of on the rights of the parties pursuant to the CBA.

5

on-duty officers working for the City. It found this comparison to be as baseless an exercise as a comparison of the wages of Pittsburgh police officers and Philadelphia police officers. Neither exercise is contemplated by the CBA. The trial court held, simply, that it was irrelevant to the grievant what anyone, other than another on-duty Pittsburgh police officer, earns. The trial court concluded that if the Union wants higher pay for on-duty officers doing the same work as off-duty officers on secondary employment, it must negotiate that with the City through the collective bargaining process. The Union appealed to this Court.

On appeal, the Union argues that the trial court erred by exceeding the scope of review applicable to Act 111 arbitration awards. The Union contends that the arbitrator interpreted the CBA and did not exceed his jurisdiction or his authority. That a reviewing court does not agree with the arbitrator's analysis is of no moment. For its part, the City responds that the trial court applied the proper scope of review and correctly reversed the arbitrator's award because the arbitrator purported to settle a grievance but, in actuality, acted as an interest arbitrator, which he is not permitted to do.

We begin with a review of the law relevant to an Act 111 arbitration. Act 111 precludes police and fire personnel from striking; in return it gives them the right of collective bargaining with their public employers over the "terms and conditions of their employment," which include "compensation, hours, working conditions, retirement, pensions and other benefits." 43 P.S. §217.1.[7] If the parties

---

[7] Section 1 of Act 111 states in its entirety as follows:

> Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the

**(Footnote continued on the next page . . .)**

6

cannot agree on the terms and conditions of employment, they can proceed to interest arbitration, which involves "the resolution of an impasse in collective bargaining over the terms of a new contract." *Township of Moon v. Police Officers of the Township of Moon*, 498 A.2d 1305, 1308 n.5 (Pa. 1985). Interest arbitration is an extension of the collective bargaining process. *Borough of Gettysburg v. Teamsters Local No. 776*, 103 A.3d 389, 391 n.1 (Pa. Cmwlth. 2014). Where the parties reach an impasse in negotiations, Act 111 requires either party to provide notice to the other and to specify the issue in dispute before requesting interest arbitration. *Id*. at 393. If the Act 111 requirements are not followed, the arbitrator lacks jurisdiction to fashion an interest arbitration award. *Id*. at 396. In addition, Act 111 provides for grievance arbitration to resolve disputes arising from an existing collective bargaining agreement. *Chirico v. Board of Supervisors For Newton Township*, 470 A.2d 470, 474 (Pa. 1983).

Section 7 of Act 111 states that arbitration determinations are to be final and binding and "[n]o appeal therefrom shall be allowed to any court." 43 P.S. §217.7. The legislature's purpose was to prevent Act 111 awards from becoming mired in litigation. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 89 (Pa. 1995). For this reason, judicial review of any Act 111 arbitration award, whether an interest or grievance

---

**(continued . . .)**

terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. §217.1.

7

award, is limited to narrow *certiorari*. This narrow review permits the court to inquire into four aspects of the arbitrator's award:

> (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights.

*Betancourt*, 656 A.2d at 85.

A court's consideration of whether the arbitration appeal implicates one of the four prongs of narrow *certiorari* "is subject to the court's non-deferential, plenary standard of review, unless that determination itself depends, to some extent, upon arbitral fact-finding or a construction of the relevant CBA." *Borough of Gettysburg,* 103 A.3d at 394-95. In other words,

> [t]he standard by which we review an arbitrator's determination of these issues [reviewable under narrow *certiorari*] depends on the nature of the issue in the case. Where resolution of the issue turns on a pure question of law, or the application of law to undisputed facts, our review is plenary. However, where it depends upon fact-finding or upon interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find it to be incorrect.

*Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084, 1089 (Pa. Cmwlth. 2008) (internal citations omitted).

This case involves prongs one and three of the narrow *certiorari* scope of review, *i.e.,* the arbitrator's jurisdiction and powers.[8] An arbitrator exceeds his jurisdiction "when he addresses issues not submitted to him."

---

[8] There have been no allegations that there was an irregularity in the proceedings or that constitutional rights were violated.

*Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper Michael Keyes)*, 54 A.3d 129, 133 (Pa. Cmwlth. 2012). An arbitrator does not exceed his authority if the acts he requires the public employer to do are legal; are acts that the employer could do voluntarily; and relate to the terms and conditions of employment. *Id*.

The Union contends that the arbitrator's award was based on his interpretation of Section 24 of the CBA regarding compensation for secondary employment work. As such, reviewing courts may not consider whether the arbitrator's interpretation is correct. The Union argues that the arbitrator did not exceed his jurisdiction because he limited himself to addressing the issue submitted, namely, whether on-duty police officers should be paid at the secondary employment rate when working alongside off-duty officers in secondary employment. The Union argues that the arbitrator did not exceed his powers because the arbitrator's award was limited to wages, which is a term and condition of employment; was not illegal; and was something that the City could have done voluntarily. Accordingly, the award cannot be set aside.

The City rejoins that the arbitrator did not interpret the CBA. Rather, he exceeded his authority by ignoring the explicit terms of the CBA and writing a new term to raise the pay of on-duty officers working their normal hours. The CBA does not require that officers doing the same or similar tasks be paid the same. Further, on-duty officers are not paid according to the type of work to which they are assigned.

The City argues that the arbitrator's attempted re-write of the CBA is impermissible in grievance arbitration. Act 111 requires the parties to collectively bargain over new contractual terms and this is what the Union should have done in

9

this case. The parties could have dealt with the issue by executing a side agreement or a memorandum of understanding or by proceeding to interest arbitration after complying with the strictures of Act 111. Instead, the Union pursued interest arbitration disguised as a grievance and now incorrectly posits that the award is essentially unassailable under the narrow *certiorari* standard. We agree with the City.

First, we reject the Union's argument that the arbitrator's award was based on his interpretation of the CBA. The Union correctly points out that Section 24 of the CBA deals with secondary employment. However, the arbitrator did not discuss, much less purport to interpret, the language in Section 24 or any other provision in the CBA. The arbitrator did not find that the City violated the CBA, as written, when it paid Officers Swartzwelder and Lincoln their regular pay rates for directing traffic while on-duty. Simply put, this Court cannot be bound by the arbitrator's interpretation of the CBA where there was no interpretation.[9]

Second, the trial court did not exceed its scope of review under narrow *certiorari*. The trial court examined the award and determined whether it was based on the CBA. It is the substance of the award, not merely the subject

---

[9] *Township of Ridley v. Fraternal Order of Police Lodge No. 27*, 718 A.2d 872 (Pa. Cmwlth. 1998), upon which the Union relies, is distinguishable. There, an officer filed a grievance to have differential pay he earned while working night shifts included in his Heart and Lung benefits. The arbitrator determined that the officer was entitled to differential pay and the trial court reversed, holding that the arbitrator exceeded his powers by supplying provisions that did not exist in the CBA. This Court reversed, holding that the arbitrator interpreted the term "while working," which is a term of employment and involved an existing portion of the CBA, and the trial court merely disagreed with the interpretation. Here, the arbitrator did not interpret any term, such as "secondary employment," which is mentioned in Section 24 of the CBA but not defined.

10

matter of the award or the question put to the arbitrator, that is critical to whether the reviewing court's review has confined itself to the limits of narrow *certiorari*.

The arbitrator had jurisdiction over the question put to him, as found by the trial court. However, in fashioning his award, the arbitrator exceeded both his jurisdiction and authority. The purpose of grievance arbitration is to resolve disputes over a provision of an existing contract. The arbitrator explained his award on the grounds that it would be "inequitable" not to give on-duty officers the same wage paid to an off-duty officer. An Act 111 grievance arbitrator does not have jurisdiction or authority to rely on principles of equity to reform the CBA.

Instead of acting solely as a grievance arbitrator, the arbitrator stepped into the shoes of an interest arbitrator by issuing an award applicable to all police officers in the bargaining unit, not just the grievants. The arbitrator decided, apparently, what the CBA should say and did not rely upon what it does say. This he lacked power to do.

Further, the Union was required by Act 111 to engage in collective bargaining with the City over the issue of pay for on-duty officers working large events where off-duty officers working secondary employment details are also present and to proceed to interest arbitration if appropriate and necessary.[10] The arbitrator's award directed the City to do something that had not been bargained with the Union; the opportunity to bargain is required by Act 111.

In sum, the arbitrator had jurisdiction to decide a grievance that the wages paid to on-duty police officers violated the CBA. However, in fashioning this award, he acted as an interest arbitrator, which exceeded his jurisdiction and

---

[10] The Union did not participate in negotiations over the secondary employment rate of pay.

11

authority in a grievance arbitration. The trial court acted within its narrow *certiorari* scope of review in reviewing and vacating the arbitrator's award.

Accordingly, the order of the trial court is affirmed.

_____

MARY HANNAH LEAVITT, Judge

Judge McGinley and Judge McCullough did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh              :
                                      :
          v.               :   No. 521 C.D. 2014
                                        :
Fraternal Order of Police Fort Pitt  :
Lodge No.1,                    :
(on-duty and off-duty pay for events), :
             Appellant     :

# **O R D E R**

AND NOW, this 12th day of March, 2015, the order of the Court of Common Pleas of Allegheny County filed March 11, 2014, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge