# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County, Pennsylvania :
:
       v. : No. 370 C.D. 2025
: ARGUED: March 3, 2026
Allegheny County Deputy :
Sheriff's Association, :
            Appellant :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STELLA M. TSAI, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: June 22, 2026**


      The Allegheny County Deputy Sheriff's Association (Union) appeals from an order of the Allegheny County Court of Common Pleas vacating a grievance Arbitration Award, wherein the Arbitrator concluded that Allegheny County violated a collective bargaining agreement (CBA) executed by the parties when the County deducted payroll taxes from retiree healthcare reimbursements. The trial court held that, in sustaining the grievance, the Arbitrator exceeded the scope of her authority by adding a missing term to the CBA. We reverse the trial court.

      The parties do not dispute the underlying facts in this matter. Article XXI, Section D of the CBA provides healthcare reimbursements for retired members of the Union who are not eligible for Medicare and do not otherwise receive healthcare through employment or a spouse. This provision authorizes a "[m]onthly medical reimbursement . . . for actual insurance costs incurred," up to a maximum

of $700 per month. Reproduced Record (R.R.) at 50.[1] The healthcare reimbursement for a retiree receiving healthcare through the County's COBRA[2] plan is paid directly to the County's insurance provider. The County does not deduct payroll taxes from these payments. A retiree who obtains private health insurance is reimbursed directly by the County. The County treats the latter reimbursement as a taxable benefit.

Former County Deputy Sheriff David Lynch retired in September 2020. At that time, Deputy Lynch began receiving healthcare through the County's COBRA plan. Accordingly, the County paid Deputy Lynch's healthcare reimbursement directly to its insurance provider. When his COBRA benefits expired in March 2022, Deputy Lynch obtained private health insurance. Thereafter, the County paid the healthcare reimbursement directly to Deputy Lynch as a taxable benefit.

On July 11, 2022, the Union filed a grievance with the County to protest the deduction of payroll taxes from retirees' healthcare reimbursements. The County denied the grievance, after which the parties agreed to submit the matter to arbitration. In addition to denying that it violated the CBA, the County argued that the grievance was untimely, as the County had deducted taxes from healthcare reimbursements for private insurance since 2004, and the Union did not file its grievance until nearly two decades later and two years after Deputy Lynch first became eligible for the benefit. The County also pointed to a March 2006 letter from the County's Assistant Solicitor to the Union's counsel, in which the Assistant

---

[1] The page numbers in the reproduced record are not followed by a small "a," as specified in Pa.R.A.P. 2173. The Court will refer to the page numbers as they appear in the reproduced record.

[2] COBRA refers to the Consolidated Omnibus Budget Reconciliation Act of 1995, 29 U.S.C. §§ 1161-1169.

Solicitor advised that the County could not "make any representations . . . over the taxability of" healthcare reimbursements. R.R. at 74. The County would, however, "seek to exclude from taxation amounts paid by" the County to cover COBRA benefits for retirees. *Id.* In addition, for retirees already receiving COBRA coverage, the County would "investigate steps it [could] take to assist [retirees] from paying taxes on these amounts." *Id.* at 75. The Assistant Solicitor stated that, if the Union agreed "with these conclusions," counsel should "sign where indicated below and return" the letter to the County. *Id.* Notably, the Union's counsel did not sign this document.

The Arbitrator conducted hearings in June and August 2023. Each party presented the expert testimony of a Certified Public Accountant, both of whom agreed that retiree healthcare reimbursements could be excluded from taxable income under IRS Revenue Ruling 61-146.[3] Despite this concession, the County's expert witness, Kevin Boland, opined that the County was not required to treat the reimbursements as non-taxable. Mr. Boland stated that the County could not verify that reimbursements made directly to retirees were used to pay for health insurance. Senior Deputy County Manager Steve Pilarski confirmed that verifying a retiree's healthcare costs would be difficult. Mr. Pilarski asserted that, without proper verification, the County could be subject to penalties from taxing authorities if it provided the healthcare reimbursement as a pre-tax benefit.

In December 2023, the Arbitrator issued the Arbitration Award sustaining the grievance. The Arbitrator recognized that the County treated the retiree healthcare reimbursement as a taxable benefit since 2004, and the County agreed in the March 2006 letter to "investigate steps it [could] take to assist [retirees]

---

[3] Transcripts from the Arbitrator's hearings do not appear in the reproduced record or the original record transmitted by the trial court.

from paying taxes." R.R. at 11. The Arbitrator found, however, that the tax status of direct reimbursements to retirees was never "confirmed by the parties," and no further action was taken on the issue until the Union filed its grievance in July 2022. *Id.* Therefore, as to the timeliness of the grievance, the Arbitrator concluded that the deduction of taxes from healthcare reimbursements represented a continuing violation of the CBA, "with each occurrence constituting a new alleged violation" that could be grieved "at any time." *Id.* Accordingly, the Arbitrator held that the grievance was arbitrable.

In holding that the County violated the CBA, the Arbitrator focused on the County's inconsistent deduction of taxes from healthcare reimbursements. Article XXI, Section D of the CBA clearly identified the healthcare reimbursement as a post-retirement benefit for eligible retirees. Therefore, treating this benefit as wages "based upon the retiree's exhaustion of COBRA benefits" conflicted with the language of Article XXI, Section D. *Id.* at 12. In addition, both CPAs agreed that, per IRS Revenue Ruling 61-146, direct reimbursements to employees for the employer's share of insurance premiums are excludable from the employees' gross income, upon proof of payment by the employee. The Arbitrator found no identified basis, aside from the County's preference, for treating the healthcare reimbursement as non-taxable when paid to the County's insurer and taxable when paid directly to a retiree. Accordingly, the Arbitrator directed the County "to pay the retiree healthcare reimbursement as a non-taxed benefit" going forward. *Id.* at 14.

The County filed a petition to vacate the Arbitration Award with the trial court, which granted the petition in February 2025. The trial court interpreted the Arbitrator's decision as requiring the County to shoulder any tax liability associated with the monthly healthcare reimbursement. The trial court noted that

4

the CBA was silent on the issue of which party should bear the tax burden and the County had treated the reimbursement as a taxable benefit "for the past 16[] years." R.R. at 303. Despite this, the Arbitrator directed the County to pay the reimbursement "and the tax associated therewith." *Id.* Citing *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1, (on-duty and off-duty pay for events)*, 111 A.3d 794 (Pa. Cmwlth. 2015) (*On- and Off-duty Pay*), the trial court held that, in so doing, the Arbitrator supplied a new, missing term to the CBA, in violation of Article XIV of the CBA. The trial court did not address the issue of timeliness in its February 2025 order or statement filed under Pa.R.A.P. 1925(a).

The issues on appeal are whether the Arbitrator exceeded her authority by adding a new term to the CBA and whether the grievance was timely.[4]

The Court's review of an arbitration award under the Policemen and Firemen Collective Bargaining Act, commonly referred to as Act 111,[5] is limited to narrow certiorari, by which the Court will only consider the following four issues: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded her authority; and (4) whether there was a deprivation of constitutional rights. *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995) [citing *City of Washington v. Police Dep't of City of Washington*, 259 A.2d 437, 441 (Pa. 1969)]. The "authority prong of narrow certiorari" is generally met where the arbitration award concerns the terms and

---

[4] The County raises an additional argument that the Arbitration Award improperly modified employee retirement benefits, which would require a cost estimate on the effect of the proposed modification, per Section 305 of the Municipal Pension Plan Funding Standard and Recovery Act. Act of December 18, 1984, P.L. 1005, 53 P.S. § 895.305. Because the County did not raise this issue before the Arbitrator, the issue is waived. *See* Pa.R.A.P. 1551(a) (only questions raised before the government unit shall be considered on appeal).

[5] Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1-217.12.

5

conditions of employment and the arbitrator has not required "the performance of an illegal act – or one that a party could not do voluntarily[.]" *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 712 (Pa. 2020) (*FOP*) (citations omitted). In accordance with Section 1 of Act 111, the terms and conditions of employment include retirement "and other benefits[.]" 42 P.S. § 217.1.

Where the resolution of a labor dispute depends on the interpretation of a CBA, "the Court is bound by the arbitrator's determination, even if incorrect." *FOP*, 224 A.3d at 712 (citations omitted). An error of law alone will not warrant reversal under the narrow certiorari scope of review. *Betancourt*, 656 A.2d 90. The arbitrator's powers lie solely in interpreting the CBA, however, and the arbitrator lacks the authority to add terms to the CBA or to the language therein. *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1*, 304 A.3d 816, 824 (Pa. Cmwlth. 2023) (*City of Pittsburgh*) (citations omitted).

The Union argues that the trial court erred in vacating the Arbitration Award because Article XXI, Section D of the CBA expressly requires the County to pay a healthcare reimbursement of up to $700 per month. Both expert witnesses agreed that the County was not required to deduct taxes from the healthcare reimbursement and the County admitted that reimbursement payments were treated as non-taxable when paid to COBRA beneficiaries. Requiring the County to make the healthcare reimbursement as non-taxable income was neither illegal nor an act that the County could not perform voluntarily. Rather, the Arbitrator simply ordered the County to do what is required by the CBA, which is to reimburse retirees up to the maximum amount for healthcare expenses. The Union acknowledges that the CBA is silent on the issue of taxation but argues that the parties had no reason to

include a provision, as taxes are "either required by law, or . . . not required by law." Union's Br. at 18.

The County characterizes the Union's argument as "placing the costs and onus of determining tax liability" on the County, rather than "the recipient of the funds[.]" County's Br. at 13. The County maintains that such matters are reserved for future interest arbitration proceedings and that terms not otherwise addressed by the CBA are reserved for the Sheriff under Article XIV of the CBA (Management Rights).[6] In the absence of an agreement on taxation, combined with the County's 16-year practice of taxing reimbursements made directly to retirees, the County argues that the Arbitrator did not interpret the CBA, but reformed it.

After review, the Court concludes that the trial court erred in vacating the Arbitration Award, which indisputably concerned the terms and conditions of employment, and the Arbitrator did not mandate that the County perform an illegal act or one that the County could not perform voluntarily. The case relied upon by the trial court, *On- and Off-duty Pay*, which the County also cites as dispositive, is factually distinguishable. That matter involved an arbitration award that required the City of Pittsburgh to pay on-duty police officers assigned to large events the same wages received by off-duty officers working the same events for private employers. The trial court vacated the arbitration award, as the arbitrator relied on principles of equity and fairness, rather than an interpretation of the CBA. This Court affirmed, noting that the arbitrator did not discuss or interpret the relevant provisions of the CBA, and "this Court cannot be bound by the arbitrator's interpretation of the CBA where there was no interpretation." *On- and Off-duty Pay*,

---

[6] Article XIV of the CBA reserves to the Sheriff any "powers, rights, authority, duties[,] and responsibilities" over matters not covered by the CBA. R.R. at 38.

7

111 A.3d at 801. The Court also agreed with the trial court that the arbitrator did not have jurisdiction or authority to rely on principles of equity to reform the CBA.

Instantly, the Arbitrator did not, as the trial court held, direct the County to pay taxes that would otherwise be paid by retirees, or add a new term to the CBA. Unlike the arbitrator in *On- and Off-duty Pay*, the Arbitrator interpreted the relevant provisions of the CBA when rendering the Arbitration Award. The plain language of Article XXI, Section D of the CBA states that a healthcare reimbursement "shall be provided for any retired member of the [Union]" who is not eligible for Medicare and does not receive health insurance through employment or a spouse. R.R. at 50. The Arbitrator interpreted this language to mean the healthcare reimbursement was a "post-retirement benefit" and not taxable wages. *Id*. at 11. While the CBA is silent on the taxation of these payments, the absence of language specific to an issue does not prevent an arbitrator from drawing conclusions related to that issue. *City of Pittsburgh*, 304 A.3d at 824 [citing *Sch. Dist. of City of Allentown v. Hotel and Rest. Emps. Int'l Union, Local No. 391, AFL-CIO*, 654 A.2d 86, 89 (Pa. Cmwlth. 1995)]. Article XXI, Section D explicitly states that the amount of the reimbursement "shall be for actual insurance costs incurred," up to a maximum of $700 per month. R.R. at 50. The Arbitrator found "no identified basis" beyond "the County's preference" for treating reimbursements to COBRA beneficiaries as non-taxable and treating the same reimbursements as wages when paid directly to retirees. *Id.* at 11. Changing the tax status of a post-retirement benefit based on "a retiree's exhaustion of COBRA benefits [was deemed] inconsistent with the language of Article XXI, Section D." *Id*.

Regarding timeliness, the CBA provides that a written grievance must be filed within 10 business days from the alleged occurrence of the grievance, or

8

within 10 days "from the time the grievant reasonably should have known or been aware of the existence of the situation giving rise to the alleged grievance." Article III, Section D(1) of the CBA; R.R. at 17. "[G]rievances must be presented under the procedures of this article promptly and within the prescribed time limitations." Article III, Section E(1) of the CBA; R.R. at 18. The arbitrator is authorized, per Article III, Section D(3) of the CBA, to "clarify and interpret the express terms, provisions or clauses of [the CBA]," and the arbitrator's decision "shall be final and binding and in accordance with the terms of Act 111." R.R. at 18. Section 7(a) of Act 111 relevantly states that an arbitrator's determination "shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved." 43 P.S. § 217.7(a). The Court is bound "by all determinations of fact and issues of law not encompassed by the standard of narrow *certiorari*, even if incorrect." *City of Phila. v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1266 (Pa. 2009) [citing *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 1000 (Pa. 2006)].

The County does not dispute that the issue of timeliness was properly before the Arbitrator.[7] In ruling on this issue, the Arbitrator cited the definition of "grievance" in Article III, Section A(1) of the CBA, which is "[a]n alleged breach or violation of [the CBA] or a dispute arising out of the interpretation or application of the provisions of" the CBA. R.R. at 10, 17. The Arbitrator acknowledged that Article III, Section D(1) requires that a written grievance be filed within 10 business days from the alleged occurrence of the grievance, or within 10 days "from the time the grievant reasonably should have known or been aware of the existence of the situation giving rise to the alleged grievance." *Id.* at 17. She found, however, that

---

[7] The County did not address this issue in the brief filed with this Court or in the amended memorandum of law filed with the trial court.

the deduction of taxes from healthcare reimbursements paid directly to retirees represented "a continuing violation" of the CBA, "with each occurrence constituting a new alleged violation[,]" which could be grieved "at any time." *Id.* at 11. Given the extreme deference owed to Act 111 Arbitration Awards, the Court will not disturb the Arbitrator's finding that the grievance was timely.[8]

        For the reasons stated herein, the Court concludes that the trial court erred when it granted the County's petition to vacate the Arbitration Award. Accordingly, the order of the trial court is reversed.

 

 

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

Judge Wojcik did not participate in the decision for this case.

---

[8] That the County continually violates the CBA is further demonstrated by several spreadsheets produced by the County, which identify healthcare reimbursements made to retirees, including Deputy Lynch. R.R. at 78-104. The spreadsheet for 2022 reflects that Deputy Lynch's COBRA benefits expired in March 2022. *Id.* at 80. Thereafter, Deputy Lynch received a monthly healthcare reimbursement in the amount of $584.42 from April 2022 through December 2022. *Id.* at 80-81. Deputy Lynch's June 2022 paystub, however, indicates that the County deducted $95.19 in taxes from the reimbursement, which is described as "Gross Wages." *Id.* at 118.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County, Pennsylvania :
:
v. : No. 370 C.D. 2025
:
Allegheny County Deputy :
Sheriff's Association, :
Appellant :

# **O R D E R**


AND NOW, this 22nd day of June, 2026, the order of the Allegheny County Court of Common Pleas granting Allegheny County's petition to vacate the Arbitration Award is hereby REVERSED.


_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita